UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JAMES CARL HIGGS                                                    PLAINTIFF

v.                                              CIVIL ACTION NO. 3:11CV-P499-S

STAFFORD EASTERLING *et al.*                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the initial review of the complaint and amended

complaints pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir.

1997). For the reasons that follow, the Court will dismiss all of Plaintiff's claims, except for his

Eighth Amendment deliberate indifference claims against Defendants Drs. Scott Haas and

Steven Shedlofsky in their individual capacities for damages.

## I.

Plaintiff is an inmate at the Kentucky State Reformatory (KSR). He brings this action

pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. He claims that Defendants violated his rights

under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments. He sues the following twenty-

two defendants in their individual and official capacities: Stafford Easterling, Attorney for the

Justice and Public Safety Cabinet; LaDonna Thompson, Commissioner of the Kentucky

Department of Corrections (KDOC); James L. Erwin, Deputy Commissioner of KDOC; Cookie

Crews, Warden of KSR; Jeanette M. Walls, Adjustment Officer at KSR; Joseph B. Woods,

Acting Adjustment Officer at KSR; Faye West, Urinalysis Coordinator at KSR; Lieutenant

Joshua Simon, Corrections Officer at KSR; Steven Stewart, Corrections Officer at KSR;

Daymon DuVall, Corrections Officer at KSR; Lieutenant Andrew Lucas, Corrections Officer at

KSR; Sergeant Timothy Hedges, Investigator at KSR; Barbara Hazelwood, Staff Representative at KSR; Dr. Julia Barber, Psychologist at KSR; CTA Jacovinto; Logsdons, Corrections Officer at KSR; Keith, Corrections Officer at KSR; David Paris, Property Room Officer at KSR; Pharmatech, Inc.; PRIDE Dental Lab; Dr. Scott Haas, Medical Director at KDOC; and Dr. Steven Shedlofsky, Director, Hepatitis C Program.[1]  As relief, Plaintiff seeks compensatory and punitive damages, damages for mental and emotional distress, and declaratory and injunctive relief in the form of prohibiting Defendants from retaliating against him, directing Defendants to cease and desist from conducting drug urinalysis or initiating disciplinary action against him, and requiring Defendants to make available the audiotapes of his adjustment hearings.

## II.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[1] On page four of the complaint form, Plaintiff also identifies Atteyat Hadizadeh and Anderson as Defendants.  According to Rule 10(a) of the Federal Rules of Civil Procedure, however, "[e]very pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation.  The title of the complaint **must name all the parties**; the title of other pleadings, after naming the first party on each side, may refer generally to other parties." (emphasis added).  Because Hadizadeh and Anderson are not listed in the caption of the complaint, they are not properly named defendants and are not parties to this action.

*Ashcroft v. Iqbal*, 556 U.S. 662, --, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'"  *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations."  *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).  And this Court is not required to create a claim for Plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to

the improper role of an advocate seeking out the strongest arguments and most successful

strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.

**A.      42 U.S.C. §§ 1985 and 1986**

Plaintiff does not state on which section of 42 U.S.C. § 1985 he is relying to assert his

claim.  Based on his allegations, however, the Court presumes that he is alleging violations

§ 1985(3).  The Sixth Circuit has held that a viable § 1985(3) claim must contain:

> (1) [A] conspiracy involving two or more persons (2) for the purpose of depriving,
> directly or indirectly, a person or class of persons of the equal protection of the laws
> and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or
> property, or a deprivation of any right or privilege of a citizen of the United States.

*Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994) (*citing Hilliard v.*

*Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994)).  A plaintiff "must also establish that the

conspiracy was motivated by a class-based animus." *Johnson*, 40 F.3d at 839.

First, Plaintiff has failed to appropriately plead the "class-based animus" element.  The

inquiry is two fold:  the plaintiff must allege that he possesses the characteristics of a discrete

and insular minority, such as race, national origin, or gender, *Haverstick Enters., Inc. v. Fin.*

*Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994), and the plaintiff must also put forth specific

facts indicating there was a conspiracy motivated by class-based, invidiously discriminatory

animus.  *Bartell v. Lohiser*, 215 F.3d 550, 559-60 (6th Cir. 2000).  In other words, "as the

Supreme Court recently held, a complaint that includes conclusory allegations of discriminatory

intent without additional supporting details does not sufficiently show that the pleader is entitled

to relief. . . . [A section 1985] claim can survive only if [the plaintiff] pleaded facts supporting

that conclusion." *Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009).  Plaintiff's complaint

4

contains no more than conclusory allegations of race-based animus.  In fact, upon review of the lengthy complaint and the amended complaints, Plaintiff does not state his own race.  Nor does he state the race of any of the Defendants.  He also alleges no supporting facts or details that Defendants were motivated by race.  The Court is not required to accept bare legal conclusions.  *See Iqbal*, 129 S. Ct. at 1949.

Additionally, the alleged conspiracy must "be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim."  *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)). Plaintiff has not pleaded the "specifics" of any alleged conspiracy such as "when, where, or how the defendants conspired."  *Perry v. Southeastern Boll Weevil Eradication Found., Inc.*, 154 F. App'x 467, 477 (6th Cir. 2005).  Therefore, Plaintiff's § 1985 claim will be dismissed for failure to state a claim upon which relief may be granted.

A cause of action under § 1986 is based on the violation of § 1985.  *Bartell v. Lohiser*, 215 F.3d at 560 (explaining that a "§ 1986 claim is derivative and conditioned on establishing a § 1985 violation").  As this Court has concluded that Plaintiff has not stated a § 1985 claim, the § 1986 claim fails and will be dismissed for failure to state a claim, as well.

**B.    42 U.S.C. § 1983**

### 1.    Official-capacity claims

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). The official-capacity claims against those Defendants who are employees or officers of the

5

Commonwealth of Kentucky are deemed claims against the Commonwealth of Kentucky.  *See Kentucky v. Graham*, 473 U.S. at 166.  State officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Thus, because Plaintiff seeks money damages from state officers or employees in their official capacities, he fails to allege cognizable claims under § 1983.  Additionally, the Eleventh Amendment acts as a bar to claims for monetary damages against these Defendants in their official capacities.  *Kentucky v. Graham*, 473 U.S. at 169.

Therefore, Plaintiff's official-capacity claims against Defendants Easterling, Thompson, Erwin, Crews, Walls, Woods, West, Simon, Stewart, DuVall, Lucas, Hedges, Hazelwood, Barber, Jacovinto, Logsdons, Keith, Paris, Haas, and Shedlofsky for monetary damages will be dismissed for failure to state a claim upon which relief may be granted and for seeking monetary relief from Defendants who are immune from such relief.

### 2.     Drug screening and disciplinary action

Plaintiff states that KSR "does not have a drug testing policy procedures for the collection, handling, preserving, and delivery of urine samples to the laboratory conducting urinalysis."  Plaintiff also cites and attaches to his complaint KDOC Policy Number 15.8, "Unauthorized Substance Abuse Testing," which sets forth policies and procedures for drug testing of inmates.

Plaintiff states that in the early hours of December 10, 2010, he was required to submit to a drug test.  He submitted a urine sample in the presence of Defendant Stewart.  He states that he could not discern whether he was given the correct urinalysis cup and that there was no seal on the cup to ascertain whether it had been previously used or tampered with.  He also states that, after testing the sample and placing the sample and the chain-of-custody form in a sealed bag,

6

Defendant Simon unsealed the bag out of Plaintiff's presence to remove Plaintiff's copy of the chain-of-custody form from inside the bag.  Plaintiff states that in disengaging the copies, Defendant Simon broke the seal on the bag containing Plaintiff's urine sample thereby compromising the integrity of the test results.  He also states that laboratory personnel of Defendant Pharmatech failed to sign, date, and certify that the container containing the urine sample arrived with the seal intact.

On December 21, 2010, Defendant West initiated disciplinary proceedings against Plaintiff on the basis that the urine sample he provided tested positive for use of cocaine. Plaintiff was interviewed by Defendant Hedges, and Plaintiff told Hedges that he left his urinalysis cup with Defendant Simon to return to his cell "and that is how the cocaine got in his cup."  Plaintiff requested several witnesses for the disciplinary hearing, including Defendants West and Stewart.  He states that when he received the disciplinary report, Defendant Hedges had removed Defendants West's and Stewart's names.  Plaintiff was charged with violating Category IV, Offense 2, Unauthorized Use of Drugs, or Intoxicants.

Plaintiff states that on January 14, 2011, he appeared before Defendant Walls to answer the charge of unauthorized use of cocaine.  Defendant Walls told Plaintiff that Defendant Easterling was the attorney who advised KSR employees to ignore the failure of Defendant Pharmatech lab personnel to sign the chain-of-custody form.  Plaintiff states that he later requested the tape of the hearing, but his request was denied.  Plaintiff was told that no hearing took place on that date.  Plaintiff claims that Defendant Walls erased or destroyed the tape of the hearing as "a cover up for having divulged to plaintiff that Defendant Easterling had instructed her to ignore the failure of Pharmatech to sign, date and indicate . . . whether the urine sample seal was received intact."

7

Plaintiff states that his hearing was delayed in violation of KSR policies and procedures. The delay was due to a number of issues, including the confiscation of his legal documents and evidence he intended to use at the hearing. Plaintiff states that Defendant Hazelwood, as staff counsel, was required to assist him in preparing and presenting a defense but he was not able to obtain requested documents. When he attempted to produce documentary evidence at his hearing, Defendant Woods erroneously excluded the documents stating that Plaintiff failed to present the documents twenty-four hours before the hearing, which Plaintiff states was calculated to prevent him from preserving evidence for appeals. Plaintiff describes the "crux" of his claim as follows:

> The basic premise of plaintiff's defense is that the chain of custody was broken making the lab results unreliable. There is no evidence that the sample provided by plaintiff is the same tested by Pharmatech. The crux of the matter is that defendants West, Lucas, and Hedges answers to the questions propounded to them by petitioner demonstrates inconsistencies and discrepancies which cast a dark shadow over the whole disciplinary proceedings. Beginning from the time plaintiff submitted his urine sample up to and including the hearing and appeal.

Plaintiff states that as a result of these disciplinary proceedings he was denied 90 days of good-time credit and not allowed to graduate from the KSR CHANGES Program.

A restraint which "inevitably affect[s] the duration of [an inmate's] sentence" creates a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 487 (1995). The loss of good-time credits affects the length of Plaintiff's prison sentence; thus he has a protected liberty interest in this regard. *Sandin v. Conner*, 515 U.S. at 477-78 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). A liberty interest may also be created if the condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Even if the Court concluded that Plaintiff demonstrated liberty interests entitled to due process protection, however, there is still a barrier to his Fourteenth Amendment claim.  A state prisoner may not file a § 1983 suit for damages or equitable relief challenging his conviction or sentence if a ruling on his claim would render the conviction or sentence invalid, until and unless the conviction or sentence has been reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal, or has been called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254.  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  While not all claims challenging a prisoner's conviction or sentence will necessarily demonstrate the invalidity of the judgment, *id.* at 487 n.7, if a ruling on a claim would necessarily render the duration of Plaintiff's confinement invalid, the claim must be dismissed, not for lack of exhaustion of state remedies, but because it is simply not cognizable until the challenged confinement has been remedied by some other process.  *Id.* at 487.

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the application of *Heck* to prison administrative proceedings.  If the inmate's allegations would "necessarily imply the invalidity of the punishment imposed" the claim is not cognizable in a civil action under § 1983.  *Id.* at 648.  Furthermore, in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court reemphasized that "a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)--if success in that action would necessarily demonstrate the invalidity of confinement or its duration."  *Id*. at 81-82.

9

In the instant case, Plaintiff seeks an order declaring that "the defendants' acts, actions, conduct, and behavior violated plaintiff's rights protected by the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution." Without commenting on the merits of such a claim, were the Court to find in favor of Plaintiff and conclude that Defendants violated his due process rights by engaging in the conduct summarized above, such an action would necessarily demonstrate the invalidity of Plaintiff's disciplinary action and duration of his confinement since the ultimate result would be return of his lost good-time credits. Plaintiff's sole remedy for return of good-time credits is a writ of habeas corpus. Plaintiff's due process claim with respect to his drug screening and disciplinary proceeding must, therefore, be dismissed.

Moreover, the Court notes that, to the extent Plaintiff disputes the adequacy of KSR's chain-of-custody policies and procedures, the Due Process Clause "simply does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations." *Mackey v. Montrym*, 443 U.S. 1, 13 (1979). Rather, "the relevant inquiry . . . is whether there was sufficient evidence in the record, regardless of [the alleged chain-of-custody] inconsistencies or violations, to find [Plaintiff] guilty of drug use at his disciplinary hearing." *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002); *see also Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989) ("Positive urinalysis results based on samples that officials claim to be appellant's constitute some evidence of appellant's drug use. A chain of custody requirement would be nothing more or less than an 'independent assessment' into the reliability of the evidence, and *Hill* tells us, explicitly, that such a 'credibility' determination is not required.") (citing *Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445, 455 (1985)).

10

Moreover, the failure of prison officials to follow institutional procedures or policies does not give rise to a constitutional claim. *Sandin v. Conner*, 515 U.S. at 481-82; *Smith v. City of Salem, Oh.*, 378 F.3d 566, 578 (6th Cir. 2004) ("[S]tate law, by itself, cannot be the basis for a federal constitutional violation.").

Accordingly, Plaintiff's claims regarding his drug screening and disciplinary action against Defendants Stewart, Simon, West, Hedges, Walls, Easterling, Lucas, and Hazelwood in their individual capacities for damages and injunctive relief and in their official capacities for injunctive relief and his claim against Pharmatech will be dismissed for failure to state a claim upon which relief may be granted.

### 3.    Discrimination

Plaintiff states that Defendant Barber and other members of the CHANGES program discriminated against him by not allowing him to graduate from the program and denying him good-time credit. He states that the CHANGES program is a "drug and alcohol abuse, and criminal thinking program." Plaintiff states that he had fulfilled all of the requirements for completion of the program. He states that he filed various grievances and appeals and that he was told that he was discharged from the CHANGES program based on his disciplinary conviction of testing positive for cocaine.

Plaintiff points to the treatment of three white inmates. He states that inmate Joshua Lindsay was twice found guilty of refusing to submit to a drug test, but Defendant Barber still permitted Lindsay to graduate from the program and recommended that he receive 90 days good-time credit. He states that Lindsay's offense was a Category IV, Offense 16 violation and his offense was a Category IV, Offense 2 violation.

11

Plaintiff also points to the treatment of white inmate Tommy Southland[2] whom he states got caught taking coffee and other commissary items and trading them for cigarettes. After disciplinary action was taken, Southland was recommended for a transfer. He then cut himself with a razor blade resulting in disciplinary action and assignment to segregation. Plaintiff states, "While in segregation, Southern was given a television and permitted to talk with Dr. Barber and other staff in the CHANGES Program on a daily basis." He states that Southland was shown favoritism.

Plaintiff describes a third white inmate, Chris Claxton, who was shown "racial favoritism." He states that Claxton was caught with a cell phone and tobacco resulting in disciplinary action and placement in segregation. Plaintiff states, "While assigned to segregation [Claxton] was moved to B-Wing in CPTU per instructions from Dr. Barber. He too was provided with a televison."

The Court will construe Plaintiff's discrimination claims as claims under the Fourteenth Amendment's Equal Protection Clause, which provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To prove a violation of the Equal Protection Clause, a plaintiff must allege an invidious discriminatory purpose or intent. *Washington v. Davis*, 426 U.S. 229 (1976); *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979). "'Discriminatory

---

[2]Plaintiff refers to this inmate as both Southland and Southern. In conducting the initial review, the Court assumes that they are the same person.

purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney,* 442 U.S. at 279.

First, Plaintiff fails to state his own race in the complaint and amendments.  Moreover, Plaintiff fails to assert that the persons claimed to have been afforded favorable treatment were similarly situated to him.  *See, e.g., Reed v. Reed*, 404 U.S. 71, 76 (1971) (equal protection requires that "all persons similarly circumstanced shall be treated alike") (quoting *F. S. Royster Guano Co.  v. Virginia,* 253 U.S. 412, 415 (1920)).  Plaintiff states that he was told in response to his grievance that he was discharged from the CHANGES program because he was convicted of testing positive for cocaine.  None of the white inmates Plaintiff describes were convicted of testing positive for cocaine or any other drug.  He also does not allege that two of the inmates were permitted to graduate from the program.  He states that they were given favorable treatment because they were permitted to have televisions.  However, Plaintiff states in the complaint that he also had a television.  Consequently, Plaintiff's discrimination claim is without a legal basis.

Accordingly, Plaintiff's discrimination claim against Defendant Barber in her individual capacity will be dismissed for failure to state a claim upon which relief may be granted.

### 4.    Grievances

Plaintiff also makes allegations about the handling of his grievances and appeals by Defendants Thompson, Crews, Barber, and Lucas.  However, there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure."  *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).  By the same token, a plaintiff

13

cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care.").

For these reasons, Plaintiff's § 1983 individual-capacity claims against Defendants Thompson, Crews, Barber, and Lucas for the handling of his grievances and appeals will be dismissed for failure to state a claim upon which relief may be granted.

5.        **Parole hearing**

Plaintiff next states that he met with the parole board and that Defendant Jacovinto[3] did a risk assessment wherein she stated that Plaintiff had a drug problem and recommended that he seek help from the Substance Abuse Program (SAP).  Plaintiff states that Defendant Jacovinto stated that his murder charge stemmed from a drug deal even though no evidence was adduced at trial regarding drugs.  Further, Plaintiff states that Defendant Jacovinto did not notify the Parole Board of Plaintiff's higher education achievements even though Plaintiff furnished her with records of them.  He states that Jacovinto deliberately "attempt[ed] to sabotage plaintiff's chances of making parole."  Plaintiff further states that on July 14, 2011, the Parole Board gave him a twelve-month parole deferral and recommended that he join SAP.

As discussed above, "[t]he Supreme Court has held that a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.'"  *Wilkinson v. Dotson*, 544 U.S. at 78 (quoting *Preiser v. Rodriguez*, 411 U.S. at  489).  A § 1983 claim for damages or equitable relief is barred "if success in that action would necessarily demonstrate the invalidity of confinement or its duration."  *Id.*  at 81-82.  Habeas is the sole vehicle for seeking declaratory relief because success would necessarily imply the invalidity of the punishment imposed. *Edwards v. Balisok*, 520 U.S. at 648.  Therefore, a § 1983 claim is not cognizable until the outcome of the prison proceeding has been overturned.  *Id.*  The *Edwards* court relied upon *Heck v. Humphrey*, 512 U.S. at 486-87, which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose

---

[3]Plaintiff refers to this Defendant as both Jacovinto and Jacovino.  In conducting the initial review, the Court assumes that this is the same person.

15

unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis omitted). The *Heck* doctrine applies to a prisoner's § 1983 claim seeking release on parole. *Wilkinson*, 544 U.S. at 81-82; *Norwood v. Mich. Dep't of Corr.*, 67 F. App'x 286, 287 (6th Cir. 2003).

Plaintiff's allegations make clear that his denial of parole has not been overturned. Accordingly, his § 1983 claim against Defendant Jacovinto in her individual capacity related to his parole hearing will be dismissed for failure to state a claim upon which relief may be granted.

### 6.      Prison employment

Plaintiff also states that Defendant Jacovinto denied his application for a Westlaw clerk job. He stated that one of Defendant Jacovinto's reasons for denying him the job was that he had been convicted of smuggling drugs or dangerous contraband but that she knew that to be false and refused to correct the erroneous information.

A prisoner does not have a constitutional right to prison employment or to a particular prison job. *See Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989). Therefore, this claim against Defendant Jacovinto in her individual capacity will also be dismissed for failure to state a claim upon which relief may be granted.

### 7.      Property

Plaintiff states that on February 27, 2011, Defendants Simon and DuVall and a non-Defendant conducted a search of his cell and confiscated 40 pounds of paperwork, including legal documents, law books, journals, and evidence intended for use at the disciplinary hearing. He states that he was not given a copy of the property receipt, despite KSR policies and

16

procedures which require doing so.  Plaintiff states that after two committee hearings and

reinvestigations, the committee decided that three cell searches occurring within a two-month

period were reasonable and were not harassment or intimidation.

Plaintiff also states that, after he was released from 45 days in segregation due to his

positive drug screening, all of his property was not returned to him by Defendants Paris, Keith,

and Logsdons.  He states that Defendant Paris destroyed some of his property.

Plaintiff's claims concerning the loss of his personal property do not give rise to a

constitutional violation.  The Supreme Court has held that where adequate remedies are provided

by state law, the negligent or intentional loss or destruction of personal property does not state a

claim cognizable under the Due Process Clause of the Fourteenth Amendment.  *Hudson v.

Palmer,* 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981) (*rev'd on other

grounds, Daniels v. Williams,* 474 U.S. 327 (1986)).  In order to assert a claim for deprivation of

property without due process pursuant to § 1983, a plaintiff must allege that the state post-

deprivation procedures are inadequate to remedy the deprivation.  *Parratt,* 451 U.S. at 543-44.

The law of this Circuit is in accord.  For example, in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir.

1983), the court held that "in § 1983 damage suits claiming the deprivation of a property interest

without procedural due process of law, the plaintiff must plead and prove that state remedies for

redressing the wrong are inadequate."  *Id.* at 1066.  The Sixth Circuit has found that Kentucky's

statutory remedy for such losses is adequate within the meaning of *Parratt. See Wagner v.

Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985).

Moreover, to the extent Plaintiff asserts that the confiscation of his property following the

cell search is a violation of the Fourth Amendment, that claim also fails.  The Fourth

Amendment provides, in part:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV.  In *Hudson v. Palmer,* 468 U.S. 517 (1984), an inmate brought an action under § 1983 claiming, in part, that the destruction of his personal property during a search of his cell violated his Fourth Amendment right to be free from unreasonable searches and seizures.  In rejecting the inmate's claim, the Supreme Court stated that a prisoner does not possess "any subjective expectation of privacy . . . in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches and seizures does not apply within the confines of the prison cell."  *Id*. at 526.  The same rationale applies to a prisoner's argument that the loss of his property constituted an unreasonable seizure in violation of the Fourth Amendment.  *Id*. at 528 n.8.  Thus, Plaintiff has failed to allege a cognizable Fourth Amendment claim against these Defendants.

In addition, to the extent Plaintiff asserts that confiscation of his legal materials was a denial of access to the courts, that claim would also fail.  In order to state a claim for interference with access to the courts, a plaintiff must show actual injury.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  "An inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.  That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  "'Meaningful access to the courts is the touchstone,' and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  *Id.* (internal citations

18

omitted).  "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).

Here, Plaintiff has not alleged that the confiscation of legal materials actually prevented him from meaningfully accessing the courts.  As such, he has not set forth a constitutional claim against Defendants for interference with the courts.

Thus, Plaintiff's claims concerning his lost property against Defendants Duvall, Simon, Paris, Keith, and Logsdons in their individual capacities will be dismissed for failure to state a claim upon which relief may be granted.

### 8.    Inmate trust account

Plaintiff also states that non-Defendants Janice Stanley and Brenda Covington "have systematically provided plaintiff with artificially high amounts of money credited to his institution account."  He states that amounts paid for filing fees, copies, and postage should have been deducted from his prison trust account before certifying the balance of his account to federal and Kentucky courts.

As Plaintiff did not name these individuals as Defendants in this action, Plaintiff's claims concerning his inmate trust account will be dismissed for failure to state a claim upon which relief may be granted.  However, even if Plaintiff had named them as Defendants, because Kentucky has an adequate post-deprivation procedure that inmates can use, *Wagner v. Higgins*, 754 F.2d at 191-92, Plaintiff cannot maintain a § 1983 claim based on charges to his inmate trust account.  *See, e.g., Barnes v. Johnson*, No. 90-C-6900, 1990 U.S. Dist. LEXIS 16915 (N.D. Ill.

19

Dec. 11, 1990) (holding that even if defendants did improperly take money out of the inmate's account, the claim was frivolous because the inmate had no cognizable claim under § 1983.)

### 9.    Television

Plaintiff also states that a power surge at KSR caused his television to stop working. Again, because Kentucky has an adequate post-deprivation procedure that inmates can use, *Wagner v. Higgins*, 754 F.2d at 191-92, Plaintiff cannot maintain a § 1983 claim based on the destruction of his television. Moreover, the denial of access to television does not implicate the Constitution, *Glasshofer v. Jeffes*, No. 87-478, 1989 U.S. Dist. LEXIS 9584, at *2 (E.D. Pa. Aug. 10, 1989) ("No court has recognized a federal constitutional right to the usage of radio and television by inmates."), and is not an atypical or significant hardship in relation to the ordinary incidents of prison life. *See Sandin v. Conner,* 515 U.S. at 484.

Therefore, Plaintiff's claim concerning the destruction of his television will be dismissed for failure to state a claim.

### 10.    Medical treatment

Plaintiff states that he was diagnosed with the Hepatitis C virus (HCV) eighteen years ago. He also has pulmonary emphysema. He states that Dr. Everson recommended a liver biopsy, ultrasound, and more laboratory studies for evaluation of his HCV in December 2006. He states that Defendants Haas and Shedlofsy have not approved the liver biopsy and ultrasound. Plaintiff states that on July 2, 2008, non-Defendant Pauline Kuhbander denied plaintiff treatment for HCV because he was scheduled to meet the Parole Board on September 11, 2008. Plaintiff states that he received Hepatitis A immunization vaccinations beginning in 2008. He underwent several "phlebotomies (de-ironings) procedures (removal of iron from blood)," but they were

discontinued when Plaintiff was diagnosed with anemia.  He has since lost his appetite, lost fifteen pounds, and he experiences sharp chest pains, shortness of breath, and chronic fatigue. Plaintiff states that his ALT scores and liver enzymes have been abnormally high for the last year or so.

Plaintiff states that according to CPP 13.10 he is eligible for "interferon and Rabavin treatment," but "these anti-viral treatments have been systematically denied."  He states that at no time has he been seen by a specialist in HCV or gastroenterology.  He states that a gastroenterologist would be in a better position to explain why he is having problems digesting food, irritable bowel movements, abdominal pain, and bloating.  He states that despite the red flags that his health is deteriorating, Defendants Haas and Shedlofsky have been deliberately indifferent to his serious medical needs in not permitting him to receive treatment recommended by the Centers for Disease Control and National Institute of Health.  Plaintiff states that the withholding of the ultrasound and liver biopsy for over three years makes it impossible to determine the damage to his liver caused by HCV.

Upon review, the Court will allow Plaintiff's claims of deliberate indifference to his serious medical needs in violation of the Eighth Amendment to proceed for further development against Defendants Haas and Shedlofsky in their individual capacities for damages.  In permitting these claims to proceed, the Court passes no judgment on their ultimate outcome.

**11.     Dental care**

Plaintiff states that he paid $110.00 for partial dentures and that within a couple of months the dentures broke.  He states that the dentures were sent to Defendant Pride Dental Lab for repair, but they broke within two weeks.  When Plaintiff returned the dentures to Dr.

Hadizadeh, she refused to accept them and told Plaintiff that Defendant Pride Dental Lab would not fix the dentures.  Plaintiff states that he is unable to masticate his food, which is vital to Plaintiff due to his infection with HCV.  Plaintiff states that Hadizadeh's actions were arbitrary and capricious and discriminatory considering the fact that Plaintiff is an HCV patient.  Plaintiff states that Hadizadeh suggested that Plaintiff's lower anterior teeth be "grinded down" or extracted to accommodate the upper broken partial and that this suggestion was supported by Dr. Richard Jeter.  Plaintiff states that he has never been refunded the $110.00 from Defendant Pride Dental Lab.  Plaintiff states that Hadizadeh's refusal to return the dentures to Defendant Pride Dental Lab for repair constitutes deliberate indifference to Plaintiff's serious medical needs. Plaintiff states that KDOC policies and procedures do not authorize extracting his teeth.

Plaintiff fails to properly name Hadizadeh as a Defendant in this action.  Therefore, no claim can go forward against her.  Moreover, based on the complaint, Plaintiff's allegations concerning Defendant Pride Dental Lab's attempt to repair his broken dentures amount to a negligence claim at most.  The Eighth Amendment is not implicated by mere negligent acts where no deliberate indifference is alleged by the plaintiff.  *Daniels v. Williams*, 474 U.S. 327 (1986).  Therefore, Plaintiff's claims against Defendant Pride Dental Lab will be dismissed for failure to state a claim upon which relief may be granted.

### 12.   Housing conditions

Plaintiff states that "being housed in Dormitory 2 from 22 April 2011 and the first two (2) weeks of May 2011, and again from June 2011 through September 2011 did not help plaintiff emphysema (COPD)."  He describes undesirable living conditions, stating that it was not fit for human inhabitation due to the antiquated plumbing and electrical system, exposure to toxic and

natural elements, peeling paint, mold, mildew, and foul odors.  He states that pipes and wiring were exposed and that toilets backed up when flushed.  He states that, despite maintenance workers constantly making repairs, "there is a constant threat of disease and sickness . . . . Especially for plaintiff because of his contact with tuberculosis, carrier of the HCV, and COPD." He states, "Exposure to the unhealthy living conditions may very well aggravated plaintiff's documented medical conditions."

Plaintiff states that Dormitory 2 was closed and the last of the prisoners were moved out in September 2011.  Plaintiff further states that, "Health officials and the United States Justice Department, and an independent body should conduct an inspection of the building to ascertain what dangers lurk there."  He states that "it is plaintiff's contention that his confinement in the building compounded and exasperated his weakened immune system.  Consequently, the stress from experience has sent plaintiff in great mental and emotional distress."

The Eighth Amendment protects inmates from cruel and unusual living conditions. The law has long been that "a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury."  *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994); *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305-08 (1986).  In addition to the legal requirement of an "injury" in case law historically, Congress acted to further limit prisoner suits to only a specific kind of injury.  Under the Prison Litigation Reform Act (PLRA), lawsuits brought by institutionalized persons require a "physical" injury in order to permit recovery:  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).

23

The physical injury need not be significant, but it must be more than *de minimis* for an Eighth Amendment claim to proceed.  *See Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

Plaintiff states that confinement in Dormitory 2 "did not help" his emphysema, may have aggravated his documented medical conditions and compounded his weakened immune system, and that there was a "constant threat" of disease.  However, Plaintiff does not state that he was actually injured as a result of the housing conditions or that he sought or received medical treatment as a result the housing conditions.  *See Catanzaro v. Mich. Dep't of Corr.*, No. 08-11173, 2009 U.S. Dist. LEXIS 60453, at *4 (E.D. Mich. July 14, 2009) ("[W]hile the plaintiffs make generalized claims about unsanitary prison kitchen conditions, and assert that these conditions are likely to cause the spread of communicable diseases, they do not themselves establish that, as a result of allegedly unconstitutional prison conditions, they have been injured."); *Moore v. Simmons*, No. 5:06-CT3143 H, 2007 U.S. Dist. LEXIS 68394, at *3 (E.D.N.C. May 18, 2007) (no constitutional violation where plaintiff did not state that the complained-of unhygienic conditions "caused him serious or significant physical injury" despite plaintiff's claim that the conditions caused "sore throat-high grade fever").  Plaintiff states that he suffered from several illnesses when he was transferred to Dormitory 2, but he does not allege an actual physical injury as a result of being housed there.  Plaintiff's allegations are merely conclusory and are not sufficient to plead an actual physical injury.

Therefore, Plaintiff has not met the PLRA's threshold, and he cannot recover damages for emotional or mental distress.  Moreover, Plaintiff alleges that Dormitory 2 has been closed. Any claim for injunctive relief is also subject to dismissal.

24

Accordingly, Plaintiff's claims for damages and injunctive relief concerning Dormitory 2 will be dismissed for failure to state a claim upon which relief may be granted.

### 13.    Retaliation

Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394.  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*

Plaintiff states that Defendant Paris destroyed or withheld his property "in retaliation for the verbal altercation."  Plaintiff states that on another occasion Defendant DuVall falsely accused Plaintiff of threatening him "in retaliation for other confrontations" between Plaintiff and DuVall.  With respect to these retaliation claims, Plaintiff fails to meet the first element of a retaliation claim.  Verbal altercations and confrontations are not protected conduct.  Therefore, Plaintiff's retaliation claims against Defendants Paris and DuVall are subject to dismissal.

Plaintiff also states that Defendants housed him in Dormitory 2 "to frustrate [his] efforts to obtain redress from the courts and utilizing the grievance mechanism."  Moreover, he states that on January 1, 2012, he was informed that he was scheduled for a liver biopsy the following day.  However, the surgery was cancelled.  Plaintiff states that he was approved for a liver

25

biopsy in 2008.[4]  He states that "the cancellation of his medical trip for the liver biopsy was in retaliation for filing grievances and civil complaints."

While these allegations of retaliation may be sufficient to survive initial review, Plaintiff did not identify a Defendant(s) against whom he alleges these claims.  Therefore, the allegations fail to state claim and will be dismissed.  *See Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976) (to state a claim for relief, a plaintiff must show how each defendant is accountable because the defendant was personally involved in the acts about which he complains).

Accordingly, Plaintiff's claims of retaliation against Defendants Paris and DuVall in their individual capacities for damages and injunctive relief and in their official capacities for injunctive relief will be dismissed for failure to state a claim upon which relief may be granted.

### 14.    Verbal incidents

Plaintiff also states that several prison guards suspected him of promoting drugs in KSR. Plaintiff states that Defendants Simon and DuVall fed other officers information that Plaintiff was using drugs which prompted another drug test on January 5, 2011, the result of which was a negative finding for drugs.  His cell was searched and no contraband was found.  In a separate incident, Defendant Logsdons "confronted" Plaintiff about comments he had made to a recreation supervisor.  Defendant Logsdons later discussed Plaintiff with non-Defendant Gaydos in "conspirator voices."  Later Logsdons "was visibly upset and berated" Plaintiff, and Plaintiff "did not bite on the bait."  Plaintiff describes another incident where Defendant DuVall threatened to write up another inmate if he signed papers circulated by Plaintiff.

---

[4]The Court notes that Plaintiff stated in his original complaint that he was approved for a liver biopsy in 2006.

Although reprehensible and not condoned, verbal abuse, harassment, and threats are insufficient to state a constitutional violation under § 1983. *See Ivey*, 832 F.2d at 955; *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (finding guard's threat of sexual assault did not violate plaintiff's constitutional rights); *Clark v. Turner*, No. 96-3265, 1996 U.S. App. LEXIS 33113, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights.").

Therefore, Plaintiff's individual-capacity claims against Defendants Simon, DuVall, and Logsdons for verbal harassment or threats will be dismissed for failure to state a claim upon which relief may be granted.

### 15.    Defendant Erwin

The complaint makes no reference to Defendant Erwin except in the portions of the complaint where Defendants are to be listed.  Plaintiff states no facts regarding Defendant Erwin's personal involvement in the events giving rise to the complaint.  Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While the Court is aware of its duty to construe *pro se* complaints liberally, Plaintiff is not absolved of his duty to comply with the Federal Rules of Civil Procedure by providing each Defendant with "fair notice of the basis for his claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  To state a claim for relief, Plaintiff must show how each Defendant is accountable because the Defendant was personally involved in the acts about which he complains.  *See Rizzo v. Goode*, 423 U.S. at 375-76.  Because Plaintiff has not alleged any facts involving Defendant Erwin, the

individual-capacity claim against him will be dismissed for failure to state a claim upon which relief may be granted.

## IV.

For the reasons set forth herein, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that Plaintiff's official-capacity claims for damages against Defendants Easterling, Thompson, Erwin, Crews, Walls, Woods, West, Simon, Stewart, DuVall, Lucas, Hedges, Hazelwood, Barber, Jacovinto, Logsdons, Keith, Paris, Haas, and Shedlofsky are **DISMISSED** pursuant to 28 U.S.C. §§ 1915A(b)(1), (2) for failure to state a claim upon which relief may be granted and for seeking monetary damages from a Defendant who is immune from such relief.

**IT IS FURTHER ORDERED** that all claims for injunctive relief and Plaintiff's claims against Defendant Erwin are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that the following § 1983 claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted:

(a)     drug screening and disciplinary action;

(b)     discrimination;

(c)     grievances;

(d)     parole hearing;

(e)     prison employment;

(f)     lost or destroyed property;

(g)     inmate trust account;

28

(h)     destroyed television;

(I)     dental care;

(j)     housing conditions;

(k)     retaliation; and

(l)     verbal incidents.

Because no claims remain against Easterling, Thompson, Erwin, Crews, Walls, Woods, West, Simon, Stewart, DuVall, Lucas, Hedges, Hazelwood, Barber, Jacovinto, Logsdons, Keith, Paris, Pharmatech, Inc., and Pride Dental Lab, the Clerk of Court is **DIRECTED** to **terminate** them from the action.

The Court will enter a separate Scheduling Order governing the development of the remaining claims.

Date:   March 1, 2012

**Charles R. Simpson III, Judge**
**United States District Court**

cc:     Plaintiff, *pro se*
        Defendants
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4411.010

29