## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

JAMES CARL HIGGS                                                                    PLAINTIFF

v.                                                              CIVIL ACTION NO. 3:11CV-P499-S

STAFFORD EASTERLING *et al.*                                                     DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion to dismiss and/or for summary judgment by

Defendant Dr. Steven Shedlofsky (DN 24).  Plaintiff filed a response (DN 32), Defendant

Shedlofsky filed a reply (DN 33), Plaintiff filed a sur-reply (DN 38), and the motion is now ripe

for review.

At the outset, the Court observes that Plaintiff currently has an interlocutory appeal

pending in the Sixth Circuit challenging a non-dispositive decision of this Court.[1]  "As a general

rule, a district court no longer has jurisdiction over an action as soon as a party files a notice of

appeal" unless "the appeal is untimely, presents issues that the appellate court had previously

decided in the same case, or is from a non-final, non-appealable order." *Pittock v. Otis Elevator*

*Co.*, 8 F.3d 325, 327 (6th Cir. 1993).  A notice of appeal from a plainly non-appealable order may

properly be ignored by the district court.  *Cochran v. Birkel*, 651 F.2d 1219, 1222 (6th Cir. 1981).

Accordingly, while the district court lacks jurisdiction to outright dismiss the improper appeal,

*Dickerson v. McClellan*, 37 F.3d 251, 252 (6th Cir. 1994), it may nevertheless proceed to

adjudicate the merits of the underlying action as if the improper appeal had not been filed.

---

[1]The Sixth Circuit notified the Court on March 19, 2013, that it was holding the case in
abeyance under Fed R. App. P. 4(a)(4) until this Court ruled on Plaintiff's pending motion to
alter, amend or correct judgment (DN 74).  The Court denied the motion by separate
Memorandum and Order entered this date.

*Cochran*, 651 F.2d at 1222.  To hold otherwise, would be to allow "a litigant to deprive the court

of jurisdiction at any and every critical juncture merely by filing a notice of appeal from any

non-appealable order entered in the district court."  *Id.* (quoting *Hodgson v. Mahoney*, 460 F.2d

326 (1st Cir. 1972)).  Upon review of the pending notice of appeal (DN 80) filed by Plaintiff, the

Court finds that it is an attempt to appeal a non-final, non-appealable order, and therefore, does

not divest this Court of its jurisdiction.

For the reasons that follow, the Court will grant Defendant Shedlofsky's motion to

dismiss and/or for summary judgment.

## I.

Plaintiff was an inmate at the Kentucky State Reformatory (KSR) during the time

relevant to the complaint.[2]  He initially filed suit against twenty-two defendants alleging a

variety of claims.  In accordance with 28 U.S.C. § 1915A, the Court conducted an initial review

of the complaint and the first and second motions to amend and/or supplement the complaint.

The Court allowed Plaintiff's claims alleging denial of medical treatment for the Hepatitis C

virus (HCV) to proceed against Defendants Shedlofsky and Scott A. Haas, M.D., in their

individual capacities for damages and dismissed Plaintiff's remaining claims.

In the complaint, Plaintiff stated that he was diagnosed with HCV eighteen years

previously.  He stated that Dr. Everson recommended a liver biopsy, ultrasound, and more

laboratory studies for evaluation of his HCV in December 2006.  He stated that Defendants

Shedlofsky and Haas had not approved the liver biopsy and ultrasound.  Plaintiff stated that on

---

[2]On February 22, 2013, Plaintiff filed a notice of change of address (DN 76), indicating that he has been released from custody.

July 2, 2008, non-defendant Pauline Kuhbander denied plaintiff treatment for HCV because he was scheduled to meet the Parole Board on September 11, 2008.  Plaintiff stated that he received Hepatitis A immunization vaccinations beginning in 2008.  He underwent several "phlebotomies (de-ironings) procedures (removal of iron from blood)," but they were discontinued when he was diagnosed with anemia.  According to the complaint, he had lost his appetite, lost fifteen pounds, and was experiencing sharp chest pains, shortness of breath, and chronic fatigue.  Plaintiff stated that his alanine aminotransferase (ALT) levels and liver enzymes were abnormally high for the previous year or so.

Plaintiff further stated in the complaint that according to Kentucky Corrections Policies and Procedures (CPP) 13.10 he was eligible for "interferon and Rabavin treatment," but "these anti-viral treatments have been systematically denied."  He stated that at no time had he been seen by a specialist in HCV or gastroenterology.  He stated that a gastroenterologist would be in a better position to explain why he was having problems digesting food, irritable bowel movements, abdominal pain, and bloating.  He stated that despite the red flags that his health was deteriorating, Defendants Haas and Shedlofsky were deliberately indifferent to his serious medical needs in not permitting him to receive treatment recommended by the Centers for Disease Control and National Institute of Health.  Plaintiff stated that the withholding of the ultrasound and liver biopsy for over three years made it impossible to determine the damage to his liver caused by HCV.

In support of his motion for summary judgment, Defendant Shedlofsky offers his affidavit wherein he states that he serves as the Director of the Hepatitis Management Program for the Kentucky Department of Corrections (KDOC).  He helped draft the Hepatitis

Management Plan (or Management Plan) and continues to provide oversight for the evaluation and treatment of inmates with viral hepatitis.  According to Defendant Shedlofsky, the Management Plan, which he produced as an attachment to the affidavit, sets forth recommendations for evaluation and treatment of HCV positive inmates.  This includes recommendations as to which inmates receive the treatment sought by Plaintiff, the treatment approved by the U.S. Food and Drug Administration for HCV involving an injection of pegylated interferon once a week and oral ribavirin twice a day.  Defendant Shedlofsky's affidavit states that the treatment is difficult to tolerate and comes with risks of serious complications, including anemia, severe depression, rash, respiratory distress, blindness, and death.

The Management Plan requires testing of the inmate's levels of ALT.  According to the Management Plan, once an inmate has three abnormal ALT values, the HCV positive inmate is eligible for a liver biopsy.  Further, the Management Plan recommends a repeat biopsy every three years to determine whether the infection is causing fibrosis.  If a biopsy shows fibrosis of the liver greater than Stage F2, the inmate is eligible for pergylated interferon injections and oral ribavirin therapy.  If the biopsy shows fibrosis of Stage F2 or less, then the inmate is not eligible for the treatment but will receive another biopsy in three years.

According to Defendant Shedlofsky's affidavit, the Management Plan recommends biopsies every three years because HCV generally progresses slowly.  A biopsy is an invasive procedure where a needle is inserted into a patient's liver and carries risks, including slight risks for infection, damage to adjacent organs, bleeding, and death.  The risks and costs associated with the biopsy weigh against having a liver biopsy performed more frequently.

Defendant Shedlofsky further states in his affidavit that the anti-viral treatment bears an "enormous physical burden" and it requires a lengthy course of treatment of 24 to 48 weeks. For that reason, the Management Plan has several exclusions that prevent inmates from receiving evaluation and treatment. Specifically, inmates who are eligible for parole within the next twelve months are excluded because of the length of the course of treatment. Moreover, inmates that fail random drug and alcohol screenings are also excluded because of the damage to the liver caused by alcohol or because drug usage impedes the success of the anti-viral treatment.

Defendant Shedlofsky further states that he reviewed Plaintiff's medical records, other documents Plaintiff attached to his pleadings, and entries Shedlofsky made into the KDOC Hepatitis C Database concerning Plaintiff. Based on these documents, Defendant Shedlofsky sets forth the following concerning Plaintiff's course of treatment.

On October 5, 2008, Plaintiff became eligible for evaluation and treatment under the Management Plan when he failed to make parole. However, his ALT levels were not high enough to receive a biopsy under the Management Plan. Defendant Shedlofsky recommended that Plaintiff receive a Hepatitis A vaccination and blood de-ironing.[3] On February 4, 2009, Defendant Shedlofsky noted that the de-ironing had led to a mild anemia, and it was therefore discontinued.

On January 5, 2010, Defendant Shedlofsky noted that Plaintiff's ALT levels had increased and, in accordance with the Management Plan, Shedlofsky recommended a liver biopsy. Defendant Shedlofsky states that he does not know why the biopsy did not occur as he

---

[3]According to the Management Plan, "[s]ince excess liver iron is associated with increased fibrosis in Hepatitis C patients and iron removal tends to improve ALT values, we strongly recommend that all inmates with serum ferritins >200 be de-ironed."

recommended.  He further states that, although it was unknown to him at the time, from a review of the records attached to the complaint, Plaintiff tested positive for cocaine after a random drug screening on December 12, 2010.  The positive screening made Plaintiff ineligible for treatment under the Management Plan.

According to Defendant Shedlofsky's affidavit, on June 7, 2011, the electronic medical record indicated that Plaintiff was eligible for parole in September 2011.  Therefore, he became ineligible for treatment under the Management Plan.  On September 23, 2011, after being denied parole, Plaintiff requested a biopsy since his next parole eligibility was September 15, 2012. Defendant Shedlofsky states that, "[t]his was close enough to twelve months and so I approved the liver biopsy."  The biopsy was performed on January 20, 2012, which revealed Stage 1 fibrosis.  According to Defendant Shedlosfky, this represents minimal damage to the liver and under the Management Plan did not qualify Plaintiff for anti-viral treatment.  Plaintiff was counseled to request a repeat biopsy in three years to determine if the disease had progressed.

Defendant Shedlofsky's affidavit further states, "Because his biopsy in January 2012 did not show advanced fibrosis, it is clear that if his biopsy had been performed in January 2010, it would have also not shown advanced fibrosis."  He further states, "It is my professional opinion that Mr. Higgs received medical treatment well within the accepted standard of medical care and within the requirements of the Hepatitis C Management Plan for all of his conditions and not causative of any injury."

In his unverified response to Defendant Shedlofsky's motion, Plaintiff does not dispute that the Hepatitis Management Plan is utilized by the KDOC in determining treatment received by inmates for HCV or that he received treatment in accordance with the Management Plan.  Nor

does he refute Defendant Shedlofsky's characterization of the Management Plan's provisions.

Plaintiff states that Defendant Shedlofsky ignores the fact that in December 2006 Dr. Everson,

plaintiff's primary care provider at the time, requested a liver biopsy and ignores that Plaintiff

tested positive for HCV in May 1998.  Plaintiff also states that in 2009 his ALT levels qualified

him for anti-viral treatment and a liver biopsy.  He states medical provider Kuhbander informed

Defendant Shedlofsky on January 5, 2010, and Shedlofsky referred Plaintiff for a biopsy.

Plaintiff states that the Surgical Pathology Report from his January 2012 liver biopsy did

not indicate a malignancy.  However, he states that "there was an increase in portal inflammation

(chronic) with focal portal expansion and periportal fibrosis.  A rare acidophill body was also

identified."

Plaintiff argues that Defendant Shedlofsky has an incentive to keep costs down for

treating prisoners, including treating Plaintiff's HCV.  Plaintiff states that he is 63 years-old.  He

states that, according to the Department of Health and Human Services and the National

Institutes of Health, patients older than 60 "should be managed on an individual basis because

the benefit of treatment has not been well documented."  He also contends that denial of

treatment because of parole hearings constitutes an excessive risk to his health.

Plaintiff states that he requested appointments related to his HCV and complaints

regarding symptoms from HCV including abdominal pain, chronic fatigue, mental confusion,

and depression.  He states, "Plaintiff received blood and urine tests [] in response to these

complaints."  He also states that he received a colonoscopy in March 2009.  Plaintiff also states

that his "white blood cells (WBC) decreased notably, i.e., neutrophiles, lymphecytes, and

monocutes . . . . Consequently, plaintiff's bone marrow function was compromised by the lack of

treatment long before Dr. Shedlofsky came on the scene.  However, Dr. Shedlofsky did not take into account plaintiff's history or clinical studies."  Plaintiff further states, "The emphasis placed on plaintiff's ALTs excluding other factors constitutes reckless disregard of a known risk to plaintiff HBV or HCV."

Plaintiff also cites the Equal Protection Clause and states that he is "a member of a class of prisoners with chronic HCV."  He states that he was assigned to Dormitory 2, which was not "appropriate housing."  Moreover, he argues that the Hepatitis Management Plan amounts to a denial of due process because, while he concedes that in his case treatment would require 48 weeks of anti-viral treatment, he states that parole eligibility within one year should not be the sole reason for denying treatment since treatment could continue on the streets.

Further, Plaintiff filed a sur-reply in opposition to Defendant Shedlofsky's motion, in which he argues that he may have Crohn's disease of the colon or small intestine.  He also contends that other lab tests, including his ASTs,[4] should have been considered in determining whether liver damage has occurred.[5]

## II.

Federal Rule of Civil Procedure 12(b) provides for the dismissal of claims and parties for seven listed reasons.  Subsection (b)(6) provides for dismissal for failure to state a claim upon which relief can be granted.  Thereafter, Fed. R. Civ. P. 12(d) states as follows:

---

[4]According to http://www.webmd.com/digestive-disorders/aspartate-aminotransferase-ast, AST stands for Aspartate Aminotransferase and is an enzyme in the blood.

[5]Plaintiff makes other arguments concerning his vaccination for the Hepatitis A virus and dental treatment he received.  These arguments are not relevant to the instant motion.

> If, on a motion under Rule 12(b) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties shall be given reasonable opportunity to present all material made pertinent to the motion.

Thus, the plain language of Rule 12(d) permits a 12(b)(6) motion to be converted into a motion for summary judgment. As Defendant Shedlofsky moved for summary judgment in the alternative and submitted matters outside the pleadings, specifically his affidavit and its attachments, summary- judgment standards will be applied.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material when it is capable of affecting the outcome of a suit under governing law, and a dispute about a material fact is "genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its burden, then the non-moving party must cite to particular parts of the record showing a fact that is genuinely disputed; or show that the materials cited by the movant do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1)(A) and (B). If the non-moving party fails to show a genuine dispute exists, the court may grant the moving party summary judgment under Fed. R. Civ. P. 56(c)(3). It is insufficient that a non-moving party rest on its pleadings; he must present some "specific facts showing that there was a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. This requires a non-moving party to "do more than simply show that there is some meta-physical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately, the

Sixth Circuit has stated that the standard for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

### III.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. at 835 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002). To rise to the level of an Eighth Amendment violation, a prison official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. at 837-38.

Thus, the standard for a claim of deliberate indifference has both a subjective and objective component. *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Broyles v. Corr. Med. Servs.*, 478 F. App'x 971, 975 (6th Cir. 2012) (quoting *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)). "[T]he subjective intentions of prison authorities must be demonstrated by objective manifestations of such intent, and cannot

be proved by factually unsupported, conclusory opinions of the court or of the prisoners or their

representatives." *United States v. Michigan*, 940 F.2d 143, 154 n.7 (6th Cir. 1991). In

examining deliberate indifference to medical needs, the Sixth Circuit has stated:

> Officials may be shown to be deliberately indifferent to such serious needs without evidence of conscious intent to inflict pain. However, the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.

*Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d at 660 (citations omitted).

The objective component of an Eighth Amendment deliberate-indifference claim requires

the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646

(6th Cir. 2005). The objective component is governed by "contemporary standards of decency."

*Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "[O]nly those deprivations denying 'the minimal

civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth

Amendment violation." *Id.* at 9 (citations omitted). Prisoners are not entitled to "unqualified

access to health care." *Id.*

Where a prisoner has received some medical attention and the dispute is over the

adequacy of the treatment, federal courts are generally reluctant to second guess medical

judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

> We distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Id.* (citations omitted). In *Estelle v. Gamble*, 429 U.S. 97 (1976), the plaintiff complained that he

11

had not received appropriate treatment for back problems. The Supreme Court stated: "But the question whether an X-ray -- or additional diagnostic techniques or forms of treatment -- is indicated is a classic example of a matter for medical judgment. A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment." *Id*. at 107.

Plaintiff does not dispute that he received treatment for his HCV in accordance with the Hepatitis Management Plan. He likewise does not refute any of the statements made in Defendant Shedlofsky's affidavit concerning the course of his medical treatment. He received blood de-ironing and regular testing of his ALT levels and other blood work. Plaintiff concedes that when he complained of ailments which he alleges were symptoms of HCV, he "received blood and urine tests [] in response to these complaints." Moreover, it is not disputed that he ultimately received the liver biopsy he desired. Therefore, Plaintiff's claims that he did not receive the treatment he desired or see a specialist amount to a disagreement with respect to his medical care. Such mere disagreement cannot give rise to a constitutional claim. *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996); *Westlake v. Lucas*, 537 F.2d at 860 n.5.

The thrust of Plaintiff's claims is that he should have received a liver biopsy and anti-viral treatment beginning in December 2006 when a biopsy was ordered by Dr. Everson but did not receive one until January 2012. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004) (quoting *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001)). Plaintiff did not present verifying medical evidence of the detrimental effect of any delay in treatment. The liver biopsy he sought was conducted in January 2012 and in fact

showed that Plaintiff was not entitled under the Hepatitis Management Plan to the anti-viral

treatment he desires.  It is undisputed that if Plaintiff was not eligible for the anti-viral treatment

in 2012, he would not have been eligible for the treatment at any earlier date as HCV is a

progressive disease.

 To the extent Plaintiff argues in his response that while the biopsy report did not indicate

a malignancy it did in fact indicate damage to his liver, he has presented no expert medical

evidence that this alleged damage was caused by a delay in treatment rather than caused by the

HCV itself.  Plaintiff also argues that the Management Plan should not exclude inmates within

one year of parole and that it should take other lab results, such as ASTs, into account in addition

to ALTs when determining whether an inmate is eligible for a biopsy.  As to this argument or

any other arguments Plaintiff raises with respect to the Hepatitis Management Plan, first,

Plaintiff presents no expert medical evidence in support of these arguments.  Secondly, the Sixth

Circuit has recognized that a hepatitis management plan may withhold treatment because an

inmate does not meet the plan's preestablished parameters.  *See, e.g.*, *Johnson v. Million*, 60 F.

App'x 548 (6th Cir. 2003); *Howze v. Hickey*, No. 10-CV-094-KKC, 2011 U.S. Dist. LEXIS

16217, at *1 (E.D. Ky. Feb. 17, 2011).

 Furthermore, Plaintiff's equal protection and due process claims were dismissed by the

Court in the Memorandum Opinion and Order upon initial review (DN 13) for the reasons stated

therein.  None of the arguments Plaintiff raises in his response give the Court reason to

reconsider the dismissal of these claims.

 Plaintiff therefore has failed to present evidence that would be sufficient to require

submission of the issue to the jury, *Lucas v. Leaseway Multi Transp. Serv., Inc*., 738 F. Supp.

214, 217 (E.D. Mich. 1990), and there is no genuine issue of material fact as to this issue.

Accordingly, Defendant Shedlofsky is entitled to summary judgment.

### IV.

For the reasons set forth above, **IT IS ORDERED** that Defendant Shedlofsky's motion to dismiss and/or for summary judgment (DN 24) is **GRANTED.**  Defendant Shedlofsky is entitled to **JUDGMENT as a matter of law**, and all claims against him are **DISMISSED**.  The Clerk of Court is **DIRECTED to terminate** him as a party to the action.

**IT IS FURTHER ORDERED** that Plaintiff's motion to strike Defendant Shedlofsky's motions (DN 48) and Defendant Shedlofsky's motion for protective order (DN 52) are **DENIED as moot**.

Date:

cc:     Plaintiff, *pro se*
         Counsel of record
4411.010